## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| CHARLES J. ROBINO and ) | Case No. 15-10978 (BLS) |
| VALERIE A. ROBINO, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| FRANK ROBINO III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 15-____ (BLS) |
| ) | |
| CHARLES J. ROBINO, and ) | |
| VALERIE A. ROBINO ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT OF FRANK ROBINO III FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DISCHARGE OF CERTAIN DEBTS PURSUANT TO 11 U.S.C. § 523(a)

**COMES NOW,** Plaintiff, Frank Robino III, by and through his counsel, Cooch and Taylor, P.A. of Wilmington, Delaware, brings this adversary proceeding for the determination of dischargeability and objecting to discharge of certain debts pursuant to 11 U.S.C. § 523(a).

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of this adversary proceeding is properly in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. § 523 and Federal Rules of Bankruptcy Procedure 4007 and 7001.

## THE PARTIES

4. Plaintiff Frank Robino III is a citizen of the State of Florida, residing at 1135 11th Court, Jupiter, Florida 33477.

5. Defendants/Debtors Charles Robino, and Valerie Robino, husband and wife, are citizens of the State of Delaware, residing at 1702 N. Park Dr., Apt. 44, Wilmington, DE 19806.

6. Frank III commenced a lawsuit on April 2, 2015, against Charles, their brother Paul, and various other construction related business entities (generally the "Robino Companies")[1] in the Court of Chancery of the State of Delaware, Civil Action No. 10871-VCN (the "Lawsuit").

7. On May 4, 2015, the same day Charles's response to the Complaint in the Lawsuit was due, Defendants filed a voluntary Chapter 7 Joint Bankruptcy Petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

8. George L. Miller has been appointed the Chapter 7 trustee (the "Trustee") of the Debtors' estate.

## NATURE OF THE CASE

9. This adversary proceedings stems from the Defendant/Debtor's attempt to extinguish a vast amount of debt incurred in an amount exceeding $4,300,000, over $1,000,000 of which is owed to Plaintiff.

10. Plaintiff and Defendant Charles are two of four sons to Frank Robino Jr. ("Frank Jr.") and Marie Robino. The family, led by their father, built a construction empire that stretched

---

[1] The term "Robino Companies" includes the myriad of companies developed and implemented by the Robino family over the course of several decades.

most of the Northeast. Defendant, Valerie Robino, is employed by Christiana Health Systems as a registered nurse.

11. Frank Robino III ("Frank III") left the family business on January 1, 2001 for valuable consideration outlined in the Settlement Agreement and Release (the "Settlement Agreement") below.

12. Frank III first failed to receive a monthly payment due under the Settlement Agreement in December 2010. The trend continued and Frank III has failed to receive monthly payments continuing until the present date. The Settlement Agreement provided for the last payment to be made no later than April 10, 2016.

13. On June 17, 2013, Marie passed away at the age of 89. Through her estate and trusts, her assets were to be divided evenly between the brothers.

14. Frank III last received a payment from the Settlement Agreement in November of 2010, and has received no assets from his mother's estate.

15. Shortly after the commencement of the Lawsuit, on May 4, 2015 Charles and Valerie Robino filed the Petition. Due to the bankruptcy filing, the Lawsuit has been stayed with regards to Charles pending the resolution of the bankruptcy.

16. Through this adversary proceeding, Plaintiff seeks to have Plaintiff's debt excepted from discharge.

## FACTUAL BACKGROUND

### *The Settlement Agreement*

17. Following the death of his father, and impropriety within the Robino Companies, Frank III left the family business and sold all of his employment and ownership claims in the Robino Companies for a redemption price defined in the Settlement Agreement as:

The redemption price for all of Frank's ownership interests and rights is One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) payable as follows: (a) One Hundred Thousand Dollars ($100,000.00) less offsets of: (i) Thirty-Seven Thousand Three Hundred Forty-Four Dollars and One Cent ($37,344.01) as set forth in the February 28, 2001 reconciliation prepared by Comptroller Barbara Becker Graham; and (ii) Six Hundred Fifteen Dollars and Sixty Cents for repairs to Frank's company vehicle and resulting thereby in a net proceeds check to Frank of Sixty Two Thousand Forty Dollars and Thirty-Nine Cents ($62,040.39) payable no later than April 1, 2001; and **(b) the One Million One Hundred Fifty Thousand Dollars ($1,150,000.00) payable with interest at the rate of eight percent (8%) per annum payable by one hundred eighty (180) equal monthly installments of Ten Thousand Nine Hundred Eighty-Nine Dollars and Ninety-Nine Cents ($10,989.99) on the 10th day of each month commencing May 10, 2001 and concluding April 10, 2016. Any monthly payment not made within 30 days of the 10th of the month shall include a five percent (5%) late fee.**

18. Initially, Charles and Paul made the guaranteed monthly payments. Lacking cause, Plaintiff's brothers abruptly and without warning ceased making payments. Plaintiff last received a payment in November 2010. Plaintiff's brothers have ignored Plaintiff's requests for payments and documents.

19. Over four years of outstanding payments remain with nearly a year of future payments still owed to Plaintiff, with the last payment to be made within thirty days of April 10, 2016.

### *Marie's Estate*

20. Defendant Charles exhibited much of the same behavior concerning the assets of his mother's estate as he did regarding the assets funding the Settlement Agreement – in utter disregard for the interests of any other concerned party.

21. Marie's will provided for an equitable distribution of her tangible personal property among her surviving children. The residue of her estate was to be held in trust and her surviving children were to be co-executors of the will and trustees to the trusts. There was to be an even distribution among the four brothers concerning all property held by the estate.

22. Sometime on or around July 19, 2013, while Frank III was in Florida, a renunciation of Plaintiff's executorship of his mother's will was filed with the Register of Wills (the "Renunciation"). Plaintiff never consented to nor executed any documents concerning such renunciation of his executorship. Similar renunciations were filed for Paul and Mark, leaving Defendant Charles as the sole executor.

23. Plaintiff's brothers have thwarted Plaintiff's efforts to gain access to and familiarize himself with the documents and funds associated with the estate. As a result, Plaintiff was led to believe that the funds had been or were close to depletion.

*Defendant's Misuse of the Settlement Agreement and Marie's Estate Assets*

24. There is significant evidence that Defendants used the assets underlying both the Settlement Agreement and Marie's estate to enrich themselves or further their other businesses.

25. Plaintiff learned from Michael Stortini, a former executive with the Robino Companies and business partner to Paul and Charles, that Paul and Charles routinely intermingled funds from separate entities' accounts in utter disregard for the distinctness of each corporate entity. Specifically, Paul and Charles used the assets underlying the Settlement Agreement and Marie's estate to fund their other companies' projects, to satisfy their debts (professional and personal), and to fund their lifestyles.

26. Stortini was the managing member of the Frank Robino Companies and is well aware of how Defendants treated all of the Robino Companies' accounts as one large slush fund. Unfortunately, Stortini himself took this practice too far. Stortini was indicted in Federal Court for the District of Delaware and eventually pled guilty to stealing approximately $1,500,000 from the Robino Companies' employee pension benefit plan to pay other business expenses and for his personal uses.

27. In a related proceeding, Paul Robino agreed to a Consent Judgment holding that he and Stortini were jointly and severally liable to make full restitution to the Robino Companies' pension plan. Paul admitted that, as Chairman of the Board of the Robino Companies and a trustee of the plan, he failed to satisfy his fiduciary duties in administering the plan.

28. Upon learning this information Plaintiff commenced the Lawsuit against Charles seeking money owed to him under the Settlement Agreement and Marie's estate.

### *Chancery Litigation*

29. On February 27, 2014, Paul and Charles sent Plaintiff a letter that included the following admission: "We acknowledge that somewhere between $600k and $1.8MM was taken from our parent's estate, which was used for personal and business reasons ... We'd be happy and willing to discuss a payment and securitization plan if and when we can agree on total settlement figure." These funds from the Settlement Agreement and Marie's estate, which were improperly used or converted, were to be the assets used to pay Plaintiff the remaining monies he is owed.

30. Upon information and belief, in May or June of 2015, Charles flew to Florida on his own accord to meet with Plaintiff in an attempt to avoid civil liability and criminal prosecution. Charles offered Plaintiff an absolute settlement of $75,000, which Plaintiff respectfully declined.

31. These continued negotiations and settlement offers, initiated by Paul and Charles, confirm that Charles is aware of his wrongdoings and the possible repercussions associated with them.

32. In the Lawsuit, Plaintiff alleged that he had sustained substantial monetary damages due to Charles and Paul Robino's misappropriation of funds from the two sources.

33. Plaintiff was awarded a default judgment against Paul Robino; First Flag Inc.; Captains Deck Inc.; Rockford Care Inc.; Westover LLC; 520 Venture Corporation; Robino – Pine Valley Apartments LLC; Pine Valley Development Company LLC; Greenlawn Associates LP; Greenlawn Associates LLC; Robino Baycourt Plaza LLC; Cedar Valley LLC; Robino Investment Properties Inc.; The Hamlet Corporation; and Robino Brothers Inc. (collectively the "Non-Appearing Defendants") on June 18, 2015 with an Order for further relief that may be determined with reasonable certainty as it presents itself.

*Defendants File Bankruptcy*

34. Defendants filed the Petition on May 4, 2015 allowing Defendant Charles to temporarily evade judgment from the Lawsuit by filing the Petition instituting a mandatory stay pursuant to 11 U.S.C. § 362.

35. Under the Chapter 7 bankruptcy proceeding, Debtors Charles and Valerie Robino seek to have certain assets exempt from property of the bankruptcy estate, while simultaneously requesting a discharge of all their scheduled debts. The assets surrendered in this case are all but negligible; the debts are quite substantial.

36. On June 1, 2015, a Meeting of Creditors was held pursuant to 11 U.S.C. § 341. The Trustee and various creditors asked Charles and Valerie a myriad of questions concerning missing funds. The general answer to this question was that the money had been spent or invested with little to no return.

37. Defendants' bankruptcy filing is an attempt to discharge certain debts, including those owed to Plaintiff pursuant to Defendants' above activities. The debts owed to Plaintiff are

nondischargeable pursuant to 11 U.S.C. § 523 as set forth below. Without this equitable Court's intervention, Defendants will improperly discharge nondischargeable debts through a system that is meant to afford a fresh start to the ***honest but unfortunate debtor.***

38. Plaintiff submits that Defendants' debts to Plaintiff should be excepted from discharge.

## COUNT ONE: NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER 11 U.S.C. § 523(a)(2)(A)

39. Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

40. Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

41. The debt owed to Plaintiff, being one for money and/or property has been obtained by actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) and thus is nondischargeable.

42. Actual fraud has been defined as "properly includ[ing] all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 1 Story, Eq. Jur. § 186.

43. Upon information and belief, Defendant Charles forged Plaintiff's signature on the Renunciation on July 19, 2013 in the Office of the Register of Wills in and for New Castle

8

Country in the State of Delaware. Charles demonstrated actual fraud by using deceitful practices to deprive Plaintiff of his right to Marie's estate, a breach of Charles's legal duty to Plaintiff.

44. As such the debt owed to Plaintiff is nondischargeable within the meaning of 11 U.S.C. § 523(a)(2)(A).

## COUNT TWO: NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER 11 U.S.C. § 523(a)(4)

45. Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

46. Section 523(a)(4) of the Bankruptcy Code provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

47. Charles, as a fiduciary to the Settlement Agreement and Marie's estate, breached his duty by defalcating Plaintiff through the embezzlement of the funds appropriated to Plaintiff.

48. Defendant Charles was aware of the interest Plaintiff held in the Settlement Agreement and Marie's estate, yet still admittedly embezzled funds underlying their parent's estate per his letter dated February 27, 2014 and misused the Robino Companies' assets.

49. As such, the debt owed to Plaintiff is nondischargeable within the meaning of 11 U.S.C. § 523(a)(4).

## COUNT THREE: NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER 11 U.S.C. § 523(a)(6)

50. Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

51. Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

52. To have a debt excepted from discharge under section 523(a)(6), a party "must show that [the][d]ebtor acted deliberately and with the purpose of producing injury or with substantial certainty that [his] actions would produce injury." In re Conte, 33 F.3d 303, 307 (3d Cir. 1994).

53. Following judgment against the Non-appearing Defendants in the Lawsuit, Charles and his brother Paul, through their attorney, admitted that between $600,000 and $1,800,000 was taken from their parents' estate for personal and business reasons.

54. Through Charles's deliberate embezzlement of the funds he acknowledged were owed to Plaintiff under two separate accounts, Charles acted with the purpose, or with substantial certainty that his actions would produce injury where the debt incurred is greater than one million dollars.

55. As such, the debt owed to Plaintiff is nondischargeable within the meaning of 11 U.S.C. § 523(a)(6).

## RESERVATION OF RIGHTS

56. Plaintiff believes that additional violations by Defendants of the various provisions of section 523(a) will be uncovered through discovery in this case. Accordingly, Plaintiff hereby expressly reserves the right to amend and/or supplement either the factual bases and/or the relief requested by this Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Frank Robino III, respectfully requests as Plaintiff that this Court:

a. Enter an Order excepting to the discharge of the debt owed to Frank Robino III, Plaintiff, pursuant to 11 U.S.C. § 523(a); and

b. Award Plaintiff such further relief as is equitable and just, including reasonable costs and attorneys' fees.

Dated: July 22, 2015

**COOCH AND TAYLOR, P.A.**

/s/ Gregory F. Fischer
C. Scott Reese (#2036)
Blake A. Bennett (#5133)
Christopher H. Lee (#5203)
Gregory F. Fischer (#5269)
The Brandywine Building
1000 West St., 10th Floor
Wilmington, DE 19899-1680
Telephone: (302) 984-3800
Email: csreese@coochtaylor.com
bbennett@coochtaylor.com
clee@coochtaylor.com
gfischer@coochtaylor.com

*Attorneys for Plaintiff*